UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY WESLEY VAUGHAN,

        Petitioner,

v.                                  Case No. 3:19-cv-741-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Anthony Vaughan, an inmate of the Florida penal system, initiated this action on June 13, 2019, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] In the Petition, Vaughan challenges a 2010 state court (Duval County, Florida) judgment of conviction for first-degree murder. He raises four grounds for relief. See Petition at 5-10. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 12). They also submitted exhibits. See Docs. 12-1 through 12-

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

18. Vaughan filed a brief in reply. <u>See</u> Reply (Doc. 23). This action is ripe for review.

In his Reply, Vaughan adds two new grounds for relief to his Petition: newly discovered evidence of actual innocence and ineffective assistance of counsel for failure to object to the prosecutor's closing argument and to improper jury instructions. Reply at 7-8, 36-40. On March 30, 2022, Respondents filed a Motion to Strike, requesting that the Court strike the two new grounds for relief in Vaughan's Reply. <u>See</u> Motion (Doc. 24). Respondents argue Vaughan neither presented these claims in his Petition, nor sought leave to amend his Petition to add them. <u>Id.</u> at 3. According to Respondents, Vaughan presented these claims in his motions for postconviction relief under Florida Rule of Criminal Procedure 3.850, filed in August and October 2012, so Vaughan knew of the claims before he filed his Petition. <u>Id.</u> at 4.

The Court finds Respondents' argument to be well supported by the record. Vaughan did not seek leave to amend his Petition in a timely manner despite knowing of these claims since 2012. Accordingly, the Court will grant Respondents' Motion to the extent that it will not consider the two additional grounds for relief raised in Vaughan's Reply. <u>See</u> Fed. R. Civ. P. 15(a)(2); <u>see also</u> <u>Oliveiri v. United States</u>, 717 F. App'x 966, 967 (11th Cir. 2018) (affirming

district court's decision to not address claim that § 2255 petitioner raised for the first time in his reply brief); <u>Garcia v. Sec'y, Dept. of Corr.</u>, No. 8:10-cv-2116-T-27MAP, 2013 WL 3776674, at *4-5 (M.D. Fla., July 17, 2013) (noting that habeas petitioner's new claim raised in his reply was not authorized, where the Rules Governing Habeas Corpus Cases Under Section 2254 required all grounds for relief to be stated in the petition, and petitioner failed to seek leave to amend his petition after a response had been served).

## II. Relevant Procedural History

On January 10, 2008, the State of Florida charged Vaughan by indictment with two counts of first-degree murder (counts one and two). Doc. 12-1 at 66. On March 13, 2008, the State filed a notice of intent to seek the death penalty for counts one and two. <u>Id.</u> at 87. On September 24, 2010, at the conclusion of a guilt phase trial, the jury found Vaughan guilty as to both counts. Doc. 12-8 at 30-31. On October 15, 2010, at the conclusion of a penalty phase trial, the jury recommended that the trial court sentence Vaughan to terms of life imprisonment for counts one and two. Doc. 12-9 at 25-26. On that same day, the trial court sentenced Vaughan to two consecutive terms of life imprisonment. <u>Id.</u> at 32-37.

On direct appeal, Vaughan, through counsel, filed an initial brief, arguing that the State presented insufficient evidence that Vaughan was a principal to the murders. Doc. 12-14 at 2-20. The State filed an answer brief, id. at 22-50, and Vaughan filed a reply brief, id. at 52-56. The First DCA per curiam affirmed Vaughan's convictions and sentences without a written opinion on February 10, 2012, id. at 58; denied his motion for rehearing, id. at 61; and issued the mandate on April 12, 2012, id. at 59.

On August 14, 2012, Vaughan filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Id. at 70-86. In his Rule 3.850 Motion, Vaughan alleged a newly discovered witness revealed the identity of the shooter (ground one). Id. at 75-80. Vaughan filed an amended Rule 3.850 Motion on October 4, 2012. Docs. 12-14 at 87-97; 12-15 at 1-10. In his amended Rule 3.850 Motion, Vaughan alleged counsel was ineffective for: not developing witness testimony or investigating potential witnesses (ground two);[2] not striking a juror (ground three); waiving the independent act jury instruction (ground four); failing to move for a mistrial (ground five); and not objecting to the prosecutor's closing argument and to an improper jury

---

[2] Ground Two included nine subclaims, which the circuit court identified as paragraphs (A) through (J). Docs. 12-14 at 89-94; 12-15 at 103-04.

instruction (ground six). Docs. 12-14 at 89-97; 12-15 at 1-8. Vaughan also asserted that counsel's cumulative errors denied him a fair trial (ground seven). Doc. 12-15 at 8-9. On November 19, 2014, the circuit court struck grounds two and three as insufficient and granted Vaughan leave to amend. Id. at 17-20. Vaughan filed a second amended Rule 3.850 Motion on January 20, 2015. Id. at 21-37. The circuit court held an evidentiary hearing on ground one and paragraphs (A) though (F), as well as paragraph (I), of ground two of Vaughan's Rule 3.850 Motions. Id. at 100. On July 20, 2017, the circuit court denied relief on all grounds. Id. at 100-11. The First DCA per curiam affirmed the denial of relief without a written opinion on August 15, 2018, Doc. 12-16 at 59, and issued the mandate on September 12, 2018, id. at 61.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a

hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Vaughan's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of

final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

7

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars

relitigation of the claim unless the state court's decision (1) "was contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on

an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of

the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104

10

> S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

11

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,

12

"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>
<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Vaughan alleges counsel was ineffective when he failed
to investigate and to develop witness testimony to support his opening
statement. Petition at 5. According to Vaughan, counsel should have: (A)[4]
called witnesses who would testify that other individuals sold drugs to Surapol
Martin, one of the victims; (B) elicited testimony from witnesses that "Big D"
and "Big Man" would "front" drugs to Martin; (C) elicited testimony from
Jerome Grant that other individuals collected drug debts from Martin; (D)
elicited testimony from Grant that he had never seen Vaughan until the day
of the murders; (E) elicited testimony from James Dennis that other
individuals collected drug debts from Martin; (F) elicited testimony from
Dennis that he had never seen Vaughan until the day of the murders; (G) called
John Brooks to testify that he did not see a white PT Cruiser outside of the

---

[4] Vaughan does not provide specific facts to support ground one of his Petition
and does not adopt the corresponding ground asserted in his Rule 3.850 Motion.
Petition at 5. Nevertheless, in an abundance of caution, the Court will consider the
detailed claims as set forth in the corresponding ground of his Rule 3.850 Motion.
Petition at 6; Doc. 12-15 at 23-32.

house before the murders; (H) investigated and subpoenaed Brooks; (I) developed Patricia Musgrove's testimony about her identification of the white PT Cruiser; and (J) investigated and identified Martin's boyfriend who drove a "champagne colored" SUV. Doc. 12-15 at 25-26.

Vaughan raised a similar claim in state court as ground two of his second amended Rule 3.850 Motion. Id. at 23-32. In denying relief, the circuit court explained in pertinent part:

> In Ground Two, Defendant asserts that the State's theory included the ideas that "Defendant was the only person who fronted drugs to Surapol 'Pete' Martin," and that Defendant was "the only suspect seen in the area at the time of the murders." That assertion is refuted by the record. The State acknowledged in opening statement that Timothy Thompson and Defendant were part of a group that routinely delivered drugs to victim Martin. Mr. Thompson testified that, prior to the time of the murders, he was aware that victim Martin owed people money for drugs, and that Thompson had helped Martin before by loaning him money to pay those debts, including money Martin owed to Defendant. In addition, eyewitness Patricia Musgrove testified that when Defendant drove up to the scene, there was a passenger in the car with him. Therefore, the State's case against Defendant did not depend on the jury believing that Defendant was the only person who "fronted" drugs to victim Martin or who came around to collect drug debts. Neither did the prosecution rely on the idea that Defendant was the only suspect in the area at the time.

14

In Ground Two, paragraphs (C) through (F), Defendant claims counsel was ineffective for failing to elicit testimony that Jerome Grant and James Dennis, residents of the boarding house, the scene of the murders, knew that many people came by to collect drug debts from victim Martin, and that neither Grant nor Dennis had seen Defendant before that day. However, both of them had been very short-term residents of the home by the time of the murders; Grant testified that he had lived there for less than two weeks, Dennis testified that he had lived there for a week or a week and a half. Therefore, the possible materiality of alleged deficiencies of counsel alleged in Ground Two, paragraphs (A) through (F) is greatly diminished. This Court concludes that Defendant has failed to show prejudice by those alleged deficiencies of counsel's performance.

Ground Two, paragraphs (G) and (H), have to do with John Brooks, who neither party called as a witness at trial. After the State rested, the trial Court engaged Defendant in a colloquy, where Defendant confirmed under oath that there were no witnesses he wanted the jury to hear from, and no additional evidence he wanted [to] put on. Therefore, Defendant may not now complain about his attorney's failure to call John Brooks as a witness, or to elicit testimony from him. See Terrell v. State, 9 So. 3d 1284, 1289 (Fla. 4th DCA 2009) ("We agree that the defendant's claim as to [witness] was refuted by the record, given that his sworn motion indicated his awareness of the substance of [witness]'s testimony and his availability for trial. The defendant is thus bound by his sworn answers during the colloquy.")[.]

Ground Two, paragraph (I) concerns the failure to impeach Patricia Musgrove, a resident of the garage apartment of the boarding house, about the

15

description of the car she saw leaving the scene. Defendant asserts he is prejudiced because that unimpeached testimony placed him "at or near the scene of the crime." However, Defendant does not deny that he was at the scene of the crime, and that he knew victim Martin because he had sold drugs to Martin. Defendant's theory of the case was that he was not the shooter. Therefore, an attempt to show that Defendant was not at the scene would have been inconsistent with Defendant's theory of the case. The Florida Supreme Court has held that counsel cannot be deemed ineffective for failure to pursue a defense which is inconsistent with a defendant's theory of the case. State v. Williams, 797 So. 2d 1235, 1239 (Fla. 2001). Moreover, trial counsel testified at the hearing on the Motion regarding his attempt to impeach Ms. Musgrove and the fact that he elicited her inconsistent statements at trial through the testimony of a detective, then argued Ms. Musgrove's lack of credibility to the jury in closing.

Ground Two, paragraph (J) attempts to state a claim of ineffective assistance of counsel for failure to investigate and call a witness. . . . This claim, raised in Defendant's Amended Motion for Postconviction Relief filed October 4, 2012, was stricken as facially insufficient, with leave to amend. The Second Amended version remains facially insufficient and therefore may be summarily denied. Fla. R. Crim. P. 3.850(f)(3).

As to testimony allegedly promised in defense counsel's opening statement, but not delivered, trial counsel qualified his description of evidence to be expected by saying, "I can only tell you what I anticipate they will say, so what they say, if it differs — I'm just going on what I anticipate that they're going to say." In addition, trial counsel testified

16

credibly at the evidentiary hearing that he expected to introduce evidence about alleged drug suppliers "Big D" and "Big Man" through the testimony of Defendant at trial. State's Exhibit 1, introduced at the evidentiary hearing, was trial counsel's notes on what would have been his direct examination of Defendant. Counsel also explained his reasonable strategy to discredit witnesses Grant, Dennis and Musgrove – anyone who purported to ID the Defendant – as felons, on drugs that night. Therefore, it makes sense that he would not explore "Big D" and "Big Man" on cross with those witnesses. Counsel testified credibly that Defendant's decision not to testify was made on "game day[,]" i.e., when the trial judge, after allowing Defendant an evening to consult with counsel, required Defendant to decide. In sum, this Court concludes that Defendant's Ground Two, in all of its subclaims, is without merit.

Id. at 104-07 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 12-16 at 59.

To the extent that the First DCA denied this claim on the merits,[5] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve

---

[5] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Vaughan is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Vaughan's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. In Paragraphs (A), (G), (H), and (J), Vaughan asserts counsel should have called witnesses and presented evidence that he "promised the jury during opening statement they would hear." Doc. 12-15 at 24. Before jury selection, the trial court conducted a colloquy with Vaughan where he agreed under oath that the defense would not call any witnesses at trial. Doc. 12-10 at 49-50. Vaughan affirmed that he did not want counsel to call any witnesses. Id. at 50-51. After the State's presentation of evidence at trial, the trial court again discussed whether Vaughan wanted to present evidence or call witnesses:

> Mr. Kuritz:[6] No, Your Honor. Just for record purposes we had lengthy conversation and a lengthy meeting with my client yesterday. I went to the jail yesterday to speak with him about various options and possibilities. Mr. Hernandez and I met at length

---

[6] Richard Kuritz and James Hernandez, Esquires, represented Vaughan during the guilt and penalty phases of trial.

yesterday afternoon, late afternoon/early evening, to discuss the possibilities. I'd even communicated with the State about having some additional witnesses present for me that they had offered to have. And we would not put on any evidence, and we would not ask Mr. Vaughan – or recommend that he testify th[e]n. We've gone over it again very briefly this morning, and it's still his decision not to run a case and not to testify.

The Court: Okay. Well, I'm going to go through that with you now, Mr. Vaughan. Did you hear what your attorney had to say, that he was not going to be putting on any witnesses or introducing evidence on your behalf?

The Defendant: Yes, sir.

The Court: Were there any witnesses you wanted your attorney to have the jury hear from?

The Defendant: No, sir.
. . . .
The Court: Is there any other evidence you would like your attorneys to introduce so that the jury could consider it?

The Defendant: No, sir.

Doc. 12-12 at 224-25. When the trial court conducted the above colloquy, Vaughan had heard counsel's opening statement and the State's evidence; however, Vaughan maintained that he did not want to call witnesses or present evidence. Therefore, Vaughan's claims are refuted by his statements at trial.

In Paragraphs (C), (E), and (I), Vaughan contends counsel should have elicited testimony from Grant and Dennis that Martin owed debts to multiple drug dealers,[7] and counsel should have impeached Musgrove about her identification of the white PT Cruiser. The record demonstrates Martin's friend, Timothy Thompson, and Grant testified that Martin had a cocaine addiction and often had difficulty paying his drug debts. Docs. 12-11 at 321; 12-12 at 3, 14. Moreover, counsel cross-examined Musgrove and Grant about their descriptions of the vehicle in front of the house at the time of the murders. Doc. 12-11 at 257-59, 264-66, 321-23. Because the jury heard such testimony and still found Vaughan guilty, a reasonable probability does not exist that counsel's failure to take the proposed actions prejudiced the defense.

In Paragraphs (D) and (F), Vaughan asserts counsel should have elicited testimony from Grant and Dennis that they never saw Vaughan until the day of the murders because it would have "placed reasonable doubt in the mind of the jury that . . . Martin may not have owed drug debts to [Vaughan]" Doc. 12-15 at 28-29. However, during opening statements, the defense conceded Vaughan came to the house to collect a drug debt from Martin. Doc. 12-11 at

---

[7] The State theorized Vaughan's passenger shot Martin because Martin owed money to Vaughan for drugs. Doc. 12-11 at 196, 203, 207.

211. Moreover, Grant testified he recognized Vaughan as an individual who had previously come to the house asking for Martin. <u>Id.</u> at 284. Thompson also testified he knew Vaughan as "Dutch," and he had paid Martin's debts to Vaughan in the past. Doc. 12-12 at 6, 10, 12-13. Given the defense's concession and the above testimony, counsel was not deficient for failing to elicit testimony that Grant and Dennis had not seen Vaughan before the day of the murders.

The circuit court denied Paragraph (B) following an evidentiary hearing.[8] "In assessing an attorney's performance under <u>Strickland</u>, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" <u>Knight v. Fla. Dep't of Corr.</u>, 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting <u>Strickland</u>, 466 U.S. at 690). The Court notes that "[t]he Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved," and "[i]ntensive scrutiny and second-guessing of attorney performance are not permitted."

---

[8] The circuit court denied Ground Two Paragraph (B) on the merits when it determined counsel decided not to elicit testimony about "Big D" or "Big Man" from other witnesses or from Vaughan because he did not want to testify at trial, and when it concluded "Ground Two, in all its subclaims, [was] without merit." Doc. 12-15 at 106-07.

21

Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90). The Eleventh Circuit has explained that:

> Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).

In this case, the postconviction court determined counsel's decision not to elicit testimony about "Big D" or "Big Man" was a reasonable, strategic decision. Vaughan has not provided clear and convincing evidence to overcome this factual determination; therefore, the Court assumes under § 2254(e)(1) this factual finding is correct. The Court further finds that counsel's decision not to elicit such testimony was reasonable. At the evidentiary hearing on Vaughan's Rule 3.850 Motions, counsel testified Vaughan told him about "Big D" and "Big Man." Doc. 12-15 at 342. He had expected to elicit the names from Vaughan when he testified at trial; however, Vaughan chose not to testify at trial. Id. at 329, 335-37, 342-43. Nevertheless, counsel noted he believed the

22

defense established "that it was a drug house" and other dealers came to the house to collect debts from Martin. Id. at 338. Given the evidence and record, the Court finds counsel did not perform deficiently.

Vaughan has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming deficient performance by defense counsel, Vaughan has not shown any resulting prejudice. Thus, his ineffectiveness claim is without merit. Accordingly, Vaughan is not entitled to federal habeas relief on this claim.

## B. Ground Two

Next, Vaughan asserts counsel was ineffective when he failed to strike a juror, Alan Gordon, who knew Jacksonville Sherriff's Office (JSO) Undersheriff Gordon Bass, Sr. Petition at 7. According to Vaughan, Undersheriff Bass's son, Officer Gordon Bass, Jr., testified as a State witness at trial. Doc. 12-15 at 34. Vaughan contends Gordon likely held a bias in favor of law enforcement. Id.

Respondents argue Vaughan failed to exhaust state remedies as to this claim, and, as such, the claim is procedurally defaulted. Response at 35. According to Respondents, although Vaughan raised this claim in his second amended Rule 3.850 Motion, he failed to argue in his initial brief on appeal

that the circuit court erred when it denied the claim. Id. at 31-32. Respondents assert Vaughan raised the issue in his reply brief; however, by that time, the issue was abandoned pursuant to Florida law. Id. at 33.

Based on the record, the Court finds that Vaughan failed to raise the claim in a procedurally correct manner and the claim is, therefore, procedurally barred. See Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir. 2006) (finding a claim was not exhausted and was procedurally defaulted where petitioner did not raise it in his initial brief on appeal from the denial of his Rule 3.850 motion after a hearing, but only raised it in his reply brief, and Florida law treats such a claim as abandoned); see also Carroll v. State, 815 So. 2d 601, 609 n.7 (Fla. 2002) (finding postconviction claims to be insufficiently presented for review where appellant did not assert definitive arguments as to the claims on appeal). Vaughan has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Vaughan exhausted the claim, he is still not entitled to federal habeas relief. Vaughan raised a similar claim in state court as ground

24

three of his second amended Rule 3.850 Motion. Doc. 12-15 at 32-35. In denying

relief, the circuit court explained:

> Ground Three alleges ineffective assistance of counsel for failing to move to strike a potential juror who knew the father of a prosecution witness. Specifically, Defendant alleges that counsel's deficient performance consisted of his failure to question the venireman regarding possible bias in favor of law enforcement. A claim that counsel failed to question a venireman to establish grounds for a cause challenge, or that further questioning might have led counsel to use a peremptory challenge, is "based on nothing more than conjecture" and therefore lacks merit. Solorzano v. State, 25 So. 3d 19, 23 (Fla. 2d DCA 2009). A claim that counsel wholly failed to question a venireman during voir dire (which is Defendant's claim here) is conclusively refuted by the record "if the defendant personally and affirmatively accepted the jury prior to its being sworn, thus affirmatively representing to the court that the jury composition and selection process were acceptable." Id. at 24; see also Kelley v. State, 109 So. 3d 811, 813 (Fla. 1st DCA 2013) (affirming summary denial of claim of ineffective assistance of counsel for failure to strike jurors as biased in favor of law enforcement, where defendant affirmatively accepted the jury panel). In this case, Defendant did precisely that. Therefore, Defendant's third ground is without merit.

Id. at 107 (record citations omitted). The First DCA per curiam affirmed the

denial of relief without a written opinion. Doc. 12-16 at 59.

To the extent that the First DCA denied this claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Vaughan is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Vaughan's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984). In a postconviction context, where a defendant claims trial counsel was ineffective for failing to raise a cause challenge, the defendant must show an individual who was actually biased against him sat as a juror. Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007). Here, Vaughan cannot demonstrate Gordon was an actually biased juror. During jury selection, the prosecutor questioned Gordon about his relationship with Officer Bass. Gordon

26

stated that he did not know Officer Bass, only Undersheriff Bass. Doc. 12-10 at 254. Gordon testified he did not have any other friends in law enforcement besides criminal defense attorney friends and "judges of compensation claims." Id. at 254-55. He stated that his relationships would not make him biased for or against Vaughan, the State, or law enforcement, and that he could be fair and impartial if selected as a juror. Id. at 255. Gordon also stated his relationship with Undersheriff Bass would not cause him to give more or less weight to Officer Bass's testimony. Id. at 82. Based on the record, a reasonable attorney could have concluded that Gordon did not warrant a cause challenge, or that Gordon could be an advantageous juror for the defense because of his relationships with criminal defense attorneys.

The trial court also conducted a colloquy with Vaughan about the jury:

> The Court: All right. Mr. Vaughan, I saw you working with your lawyers during the selection process. Were you able to talk with them about the jurors that you think should be chosen, the ones that should be stricken for cause and the ones that peremptory challenges should be exercised for?
>
> The Defendant: Yes, sir.
>
> The Court: And are you satisfied these are the jurors that should be trying your case?
>
> The Defendant: Yes, sir.

Doc. 12-11 at 168. Based on the colloquy, the postconviction court correctly concluded that Vaughan could not now argue his counsel was ineffective for failing to strike Gordon. See Kelley v. State, 109 So. 3d 811, 814 (Fla. 1st DCA 2013). Accordingly, Vaughan is not entitled to federal habeas relief as to the claim in ground two.

### C. Ground Three

As ground three, Vaughan alleges counsel was ineffective when he waived the independent act jury instruction. Petition at 8. According to Vaughan, no "direct evidence" demonstrated that he participated in the murders and the State conceded he did not shoot the victims. Doc. 12-14 at 97. Therefore, Vaughan argues counsel should have requested the independent act jury instruction. Id.

Vaughan raised a similar claim in state court as ground four of his amended Rule 3.850 Motion. Id. at 96-97. In denying relief, the circuit court explained:

> Ground Four alleges that counsel rendered ineffective assistance by waiving the independent act jury instruction. In support of his alleged entitlement to that instruction, Defendant argues in the instant Motion that he was not the shooter, there was no direct evidence indicating his involvement in the murders, and he was not present when the victims were shot. Those points were argued as the basis for Defendant's

28

ore tenus motion for judgment of acquittal made at the close of the State's case. When denying that motion, the trial Court expressed its opinion that the principal jury instruction was applicable to the State's evidence. When defense counsel first announced that he would request the independent act instruction, the trial Court reminded counsel that the request was untimely, in violation of a standing order requiring proposed instructions to be submitted by the first day of trial, but ultimately instructed counsel to confer with the State and the independent act instruction could be discussed. In light of defense counsel's awareness of those facts—the trial Court's opinion that the principal instruction applied to the evidence, and the trial Court's initial resistance to considering an untimely proposed instruction—counsel's decision not [to] request the independent act instruction was reasonable strategy, and did not constitute deficient performance.

Doc. 12-15 at 107-08 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 12-16 at 59.

    To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Therefore, Vaughan is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Vaughan's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. The Florida Supreme Court has explained the independent act defense's relationship to the principal theory:

> The "independent act" doctrine applies when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, "which fall outside of, and are foreign to, the common design of the original collaboration." Dell v. State, 661 So. 2d 1305, 1306 (Fla. 3d DCA 1995) (quoting Ward v. State, 568 So. 2d 452 (Fla. 3d DCA 1990)). Under these limited circumstances, a defendant whose cofelon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act. Id. See also Parker v. State, 458 So. 2d 750 (Fla. 1984). Where, however, the defendant was a willing participant in the underlying felony and the murder resulted from forces which they set in motion, no independent act instruction is appropriate. See Lovette v. State, 636 So. 2d 1304 (Fla. 1994); Perez v. State, 711 So. 2d 1215 (Fla. 3d DCA), review denied, 728 So. 2d 204 (Fla. 1998), and cert. denied, 526 U.S. 1120, 119 S.Ct. 1772, 143 L.Ed.2d 801 (1999); State v. Amaro, 436 So. 2d 1056 (Fla. 2d DCA 1983).

<u>Ray v. State</u>, 755 So. 2d 604, 609 (Fla. 2000). Further, the "independent act instruction is inappropriate when the unrebutted evidence shows the defendant knowingly participated in the underlying criminal enterprise when the murder occurred or knew that firearms or deadly weapons would be used." <u>Roberts v. State</u>, 4 So. 3d 1261, 1264 (Fla. 5th DCA 2009).

Here, counsel did not perform deficiently when he declined to request an independent act instruction. Before counsel determined he would not request the instruction, the trial judge noted his belief that the evidence warranted a principal instruction. Doc. 12-12 at 210, 214. Although both the principal and independent act instructions can be given in certain cases, the principal instruction "is the antithesis of the Independent Act defense." <u>Barfield v. State</u>, 762 So. 2d 564, 567 (Fla. 5th DCA 2000). In addition, during his opening statement, counsel set forth the defense's version of events. He asserted Vaughan was not in the house or "even on the same block" when the murders occurred. Doc. 12-11 at 208-09, 217-18. Counsel proposed that one of Martin's boyfriends who drove a champagne-colored SUV could have murdered him. <u>Id.</u> at 219-21. Given this argument, an independent act jury instruction could have undermined the defense. Based on the above, counsel reasonably could have concluded that the defense should waive the independent act jury instruction.

Even assuming counsel performed deficiently, the defense was not prejudiced because the evidence did not support issuing an independent act jury instruction. Grant, a resident of the house where the murders occurred, testified Vaughan arrived at the house with a male passenger in a white PT Cruiser. Doc. 12-11 at 283. Vaughan asked for Martin, but Grant told him that Martin left the house earlier that day. Id. at 283, 286-87. Grant talked with Vaughan on the porch while they waited for Martin. Id. at 287. Vaughan held a .40 caliber handgun as they talked. Id. at 291-92. Once Martin arrived at the house, Vaughan, Martin, and the passenger went inside the house. Id. at 293. Vaughan told Martin that he needed the money that Martin owed him. Id. at 293. Grant testified that he heard them call "Joe-Joe" to ask for money. Id. at 294-95. Vaughan told Joe-Joe to have the money by 12:00 or "you're going to end up in a casket." Id. at 295-96. Grant noted the passenger did not talk during the conversation. Id. at 296.

Grant also testified another resident, Dennis, then told him that they needed to leave the house. Id. at 296-97. As James and Grant walked out of the house, Vaughan left the house and got into the PT Cruiser. Id. at 299. Grant testified the passenger remained in the house. Id. Vaughan drove around the street a few times, stopped the PT Cruiser in front of the house, and honked

the horn. Id. at 299, 301-02. Grant testified he heard gunshots and saw the passenger run out of the house and into the car. Id.

Dennis testified to a similar series of events. Id. at 348-69. Dennis also noted that Vaughan advised him to leave the house. Id. at 353-54. Thompson, or Joe-Joe, testified about his phone conversation with Vaughan. Doc. 12-12 at 1, 9, 12. He recalled Vaughan stating, "You know, you need to come give me my money. If not, Pete's going to pay for it one way or the other." Id. at 9. Officers located .40 caliber casings and .40 caliber bullets at the scene. Id. at 62-63, 113-14. On this record, the independent act instruction would have been inappropriate in light of the unrebutted evidence showing Vaughan knowingly participated in the shooting. See Roberts, 4 So. 3d at 1264. As such, counsel could not have been deficient for failing to seek an independent act instruction. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument). Accordingly, Vaughan is not entitled to relief on ground three.

## D. Ground Four

Vaughan next contends counsel was ineffective for failing to object or to move for a mistrial when the State prosecuted Vaughan as a principal. Petition at 10. Vaughan asserts the indictment did not charge him as a principal;

therefore, the State could not pursue such a theory at trial. Doc. 12-15 at 1. Vaughan also alleges counsel was ineffective when he failed to move for a directed verdict because the evidence did not support the jury's verdict. Petition at 10. According to Vaughan, the jury found him guilty of counts one and two as charged in the indictment; however, the indictment did not charge him as a principal. Doc. 12-15 at 4. Vaughan contends, therefore, that the jury could not convict him of both counts as charged in the indictment because the evidence at trial did not demonstrate he actually shot the victims. Id.

Vaughan raised a similar claim in state court as ground five of his amended Rule 3.850 Motion. Docs. 12-14 at 97; 12-15 at 1-4. In denying relief, the circuit court explained in pertinent part:

> Defendant's claim that he did not know he would be prosecuted as a principal (rather than as the shooter) is refuted by a discussion on the record before commencement of jury selection, where the State recited that no plea offer was made by the State, because Defendant did not want to provide information on the identity of the shooter; Defendant confirmed on the record that he did not wish to identify the shooter. Therefore, opening statement could not have been the first time Defendant learned that the State was not prosecuting him as the shooter. Ground Five is without merit in its entirety, though, for a legal reason. The Florida Supreme Court has told us that "if an information . . . charges a defendant with the commission of a criminal offense, and the proof establishes only that he was feloniously present,

34

aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained." <u>State v. Roby</u>, 246 So. 2d 566, 571 (Fla. 1971). Because there was no ground for a valid objection, counsel's failure to object, move for a mistrial, and move for a directed verdict did not constitute deficient performance. <u>Willacy v. State</u>, 967 So. 2d 131, 140 (Fla. 2007) (citing <u>Maxwell v. Wainwright</u>, 490 So. 2d 927, 932 (Fla. 1986)).

Doc. 12-15 at 108-09 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 12-16 at 59.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Vaughan is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Vaughan's ineffectiveness claim is without merit

because the record supports the postconviction court's conclusion. Pursuant to Florida law:

> Under the principal theory, one who helps another commit or attempt to commit a crime is responsible for all of the acts of her fellow codefendant if she had a conscious intent the criminal act be done and performed some act, by word or deed, that was intended to aid in inciting, causing, encouraging, assisting, or advising the other person to either commit or attempt to commit the crime.

Roberts, 4 So. 3d at 1265. Notably, "[t]here is no requirement . . . that the charging document specifically allege that the defendant acted as a principal in order for the State to pursue and the jury to be instructed on principals." Byrd v. State, 216 So. 3d 39, 43 (Fla. 3d DCA 2017) (citing State v. Larzelere, 979 So. 2d 195, 215 (Fla. 2008)).

Here, because Florida law does not require the charging document to allege a defendant acted as a principal, any objection, motion to dismiss, or motion for a directed verdict on that basis would be meritless. See Byrd, 216 So. 3d at 43. Counsel cannot be ineffective for failing to raise an argument that would not have succeeded. See Diaz, 402 F.3d at 1142. Moreover, the record shows that Vaughan knew the State would pursue a principal theory. On September 20, 2010, before jury selection, the parties discussed whether the State had extended any plea offers to Vaughan. Doc. 12-10 at 56-57. The

36

prosecutor noted the State had not made any plea offers because Vaughan did not want to identify the shooter. Id. at 56. The trial court then confirmed the information with Vaughan:

> The Court: Mr. Vaughan, is that right? <u>You don't want to identify who the person who actually fired the firearm is?</u>
>
> The Defendant: Yes, Your Honor.

Id. at 57 (emphasis added). Thus, Vaughan had notice that the State would pursue a principal theory. Accordingly, Vaughan is not entitled to federal habeas relief on ground four.

## VII. Vaughan's Motion to Stay

On June 24, 2022, Vaughan filed a Motion to Stay (Doc. 25), asking the Court to stay his case and hold the proceedings in abeyance so he can present unexhausted claims to the state court. Respondents did not provide a response.

"District courts do ordinarily have authority to issue stays, see Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936), where such a stay would be a proper exercise of discretion, see Clinton v. Jones, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)." Rhines, 544 U.S. at 276. However, the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) has changed the landscape of habeas corpus with

its "goal of streamlining federal habeas proceedings." Id. at 277. The Supreme

Court of the United States has explained:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Cf. Duncan,[9] supra, at 180, 121 S.Ct. 2120 ("[D]iminution of statutory incentives to proceed first in state court would . . . increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").
>
> For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Id.

---

[9] Duncan v Walker, 533 U.S. 167 (2001).

Following <u>Rhines</u>, the Eleventh Circuit succinctly outlined the limited circumstances in which a district court may order a stay and abeyance of a mixed petition:

> [T]he district court has discretion to employ a "stay-and-abeyance" procedure, whereby the court would stay the timely filed petition and hold it in abeyance while the petitioner returns to state court to exhaust all of his previously unexhausted claims. <u>Rhines v. Weber</u>, 544 U.S. 269, 275-79, 125 S.Ct. 1528, 1533-35, 161 L.Ed.2d 440 (2005). The Supreme Court explained that such a procedure "should be available only in limited circumstances," and only is appropriate when (1) there was good cause for the petitioner's failure to exhaust his claims first in state court, (2) the unexhausted claims are not plainly meritless, and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. <u>Id.</u> at 277-78, 125 S.Ct. at 1535.

<u>Claudio v. Sec'y, Fla. Dep't of Corr.</u>, 578 F. App'x 797, 799 (11th Cir. 2014);[10]

<u>Thompson v. Sec'y, Dep't of Corr.</u>, 425 F.3d 1364, 1365-66 (11th Cir. 2005) (per curiam) (citation omitted); <u>see also</u> <u>King v. Chase</u>, 384 F. App'x 972, 975 (11th Cir. 2010).

---

[10] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Upon review of the Motion to Stay and consideration of the <u>Rhines</u> factors, the Court finds a stay is not warranted. Vaughan does not specify the unexhausted claims in his Petition that he now wants to exhaust in state court. However, to the extent he seeks to exhaust the two new grounds for relief that he raised in his Reply, Vaughan did not properly raise those grounds before the Court. To the extent Vaughan wants to exhaust ground two of his Petition, the Court has already determined, even if Vaughan had exhausted the claim, he would not be entitled to habeas relief on ground two. Vaughan has not established that his unexhausted claims are "potentially meritorious," <u>Rhines</u>, 544 U.S. at 278, and has not demonstrated "good cause" for failing to first exhaust the claims in state court before filing in federal court. Therefore, the Court denies Vaughan's Motion to Stay.

### VIII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Vaughan seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Vaughan "must demonstrate that reasonable jurists would find the district court's assessment of the

40

constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      Respondents' Motion to Strike (Doc. 24) is **GRANTED**.

2.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED**

**WITH PREJUDICE**.

3.     Vaughan's Motion to Stay (Doc. 25) is **DENIED**.

4.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

5.     If Vaughan appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

6.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of July, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9

C:     Anthony Wesley Vaughan #J20080
        Counsel of record

42